**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

JACK RUSSELL BRISTOL

CRIMINAL ACTION
NO. 18-375

**PAPPERT, J.**                                                          **June 8, 2022**

### MEMORANDUM

Jack Russell Bristol was indicted for paying child sex traffickers in the

Philippines to direct live, private sex videos involving underage girls and attempting to

travel there so he could engage in sexual activity with them.  He retained counsel and

pleaded guilty to the three charges against him pursuant to a written guilty plea

agreement with the Government.  At his change of plea hearing, Bristol acknowledged,

among many other things, that he read, understood and discussed the plea agreement

with his lawyer.  After a lengthy colloquy, the Court found Bristol's plea was knowing,

voluntary and intelligent and accepted it accordingly.  The Court subsequently imposed

a sentence at the bottom of Bristol's advisory guideline range.

Bristol now seeks to challenge his sentence through a § 2255 petition,

contending his lawyer provided constitutionally ineffective assistance of counsel.

The Court denies the petition because Bristol's claims are foreclosed by his guilty plea

and unsupported by the record.

I

A

On August 30, 2018, the Grand Jury returned a three-count indictment charging Bristol in Counts One and Two with using an interstate commerce facility to entice a minor to engage in illicit sexual activity in violation of 18 U.S.C. § 2422(b), aiding and abetting that offense in violation of 18 U.S.C. § 2 and in Count Three with attempted foreign travel to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b).[1]  (ECF 24.)

Bristol retained Salvatore Adamo, who appeared as Bristol's counsel on September 5, 2018.[2]  (Not. of Appearance, ECF 25.)  Approximately four months later, Bristol pleaded guilty to all three counts pursuant to a written guilty plea agreement. (ECF 37.)  At his change of plea hearing, Bristol said he was changing his plea based on his own "free will."  (Change of Plea Hr'g Tr. 51:5–7, ECF 57.)  Bristol stated he talked to Adamo about his guilty plea and was satisfied with Adamo's representation.  (*Id.* at 11:20–12:1.)

Bristol also confirmed he was not receiving care for any mental condition, that he had not received mental-health treatment in roughly twenty years and that he was able to think clearly.  (*Id.* at 7:17–20, 8:6–9, 8:18–10:19.)  Additionally, Bristol said he could understand the nature and consequences of the change-of-plea proceeding.  (*Id.* at 8:12–14.)  He further stated he read his guilty plea agreement and discussed it with Adamo before signing it and that he understood its material terms.  (*Id.* at 13:17–

---

[1]     The Court presented this case's factual background in detail in its July 13, 2021 memorandum.  (ECF 87 Part I.A.)

[2]     The docket incorrectly states Adamo's designation was "CJA Appointment."

18:17); *see also* (Guilty Plea Agreement ¶ 19 (Bristol and Adamo "fully discussed"

agreement), ECF 37).

Bristol's guilty plea agreement contained terms pertaining to the statutory

maximum sentences for his offenses.  (ECF 37 ¶ 3.)  These terms stated Bristol

"understands, agrees, and has had explained to him by counsel" that the Court can

impose a maximum of life imprisonment for each of Counts One and Two and a

maximum of thirty years for Count Three.  (*Id.*)  The Government recited these terms

at Bristol's change of plea hearing, and Bristol said he discussed them with Adamo,

understood them and had no questions about them.  (Change of Plea Hr'g Tr. 46:5–

48:13, 50:11–14).

Bristol's guilty plea agreement also contained terms pertaining to waiver of his

rights to collateral attack.  (ECF 37 ¶ 16.)  These terms stated that, with limited

exceptions, Bristol waived his rights to collaterally attack his "conviction, sentence, or

any other matter relating to" his prosecution.  (*Id.*)  Bristol retained the right to claim

his counsel provided constitutionally ineffective assistance.  (*Id.*)  Again, at his change

of plea hearing Bristol stated he understood these terms.  (Change of Plea Hr'g Tr.

23:25–25:24, 50:15–19.)

Before ultimately accepting Bristol's plea, the Court found Bristol was competent

to change his plea and that his guilty plea was "knowing, voluntary, and intelligently

made." (*Id.* at 53:21–25.)  The Court also found Bristol understood the "charges against

him, his legal rights, and the maximum possible penalty" for his offenses, and that he

was waiving his right to trial and collateral attack.  (*Id.* at 54:7–16); *see also* (*id.* at

51:22–53:5 (Bristol did not object when Adamo and the prosecutor said they had no

doubts about Bristol understanding these aspects of his change of plea)).  The Court

subsequently sentenced Bristol to 360 months' incarceration—the bottom of his

advisory guideline range.  (Sentencing Hr'g Tr. 16:1–4, 64:8–13, ECF 59.)

B

On November 20, 2020, Bristol filed a *pro se* petition that, in part, raised claims

to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[3]  *See* (Pl's Pet.,

ECF 63; Feb. 2, 2021 Order, ECF 66; Not. of Election, ECF 67).

Although Bristol's Petition is disorganized and difficult to follow, he appears to

claim that Adamo provided ineffective assistance of counsel in violation of the Sixth

Amendment by failing to (1) investigate whether Bristol was competent to plead guilty

or could do so knowingly, voluntarily and intelligently; (2) pursue a "mental health"

defense; (3) move to suppress the allegedly unconstitutional confession Bristol gave to

federal officers; (4) adequately advise Bristol about his potential sentence during plea

negotiations with the Government; and (5) object to Bristol's sentence.  *See* (Pl's Pet. ¶¶

14, 25–40).  Bristol requests an evidentiary hearing on these claims.  (*Id.* at ¶¶ 41–45.)

II

A

Section 2255(a) of Title 28 of the United States Code permits a prisoner serving a

federal sentence to move the sentencing court to vacate, set aside, or correct his

sentence when (1) the sentence violated the Constitution or federal law; (2) the court

lacked jurisdiction to impose the sentence; (3) the sentence exceeded the "maximum

---

[3]     Bristol initially appealed his sentence, and the Third Circuit Court of Appeals summarily affirmed by enforcing the appellate waiver in his guilty plea agreement. (Not. of Appeal, ECF 55; Dec. 11, 2019 Third Circuit Order, ECF 60; Plea Agreement ¶ 16.)  The Third Circuit also granted Adamo's motion to withdraw as Bristol's counsel. (Dec. 11, 2019 Third Circuit Order.)

authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." A habeas corpus petition under § 2255, however, seeks an "extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

To obtain relief, the petitioner bears the burden of showing his petition has merit and must "clear a significantly higher hurdle than would exist on direct appeal." *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). Further, the finality concern served by the limits on collateral attacks has "special force" for a conviction based on a guilty plea. *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

The court must hold an evidentiary hearing for a § 2255 petition alleging ineffective assistance of counsel "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Under the requisite "two-pronged inquiry," the court must consider as true the petitioner's nonfrivolous factual claims and determine based on the existing record whether those claims conclusively fail to demonstrate ineffective assistance. *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (quoting *United States v. Dawson*, 857 F.2d 923, 927–28 (3d Cir. 1998)).

B

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, and counsel can deprive a defendant of this right by failing to render "adequate legal assistance." *Strickland v. Washington*, 466 U.S. 668, 686 (1984)

(internal quotation marks omitted).  To prevail on an ineffective assistance of counsel claim under § 2255, the petitioner must show (1) counsel provided deficient performance and (2) this deficiency prejudiced his defense.  *Id.* at 687.  A court can "proceed through this analysis in any order" and need not address both prongs if petitioner makes an insufficient showing on one.  *Id.* at 697; *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, --- (3d Cir. 2022).

The standard for attorney performance is objective reasonableness "under prevailing professional norms" when considering all the circumstances in the facts of the particular case.  *Strickland*, 466 U.S. at 687–88, 690; *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017).  Judicial review of counsel's performance is highly deferential.  *Strickland*, 466 U.S. at 689.  Courts must "eliminate the distorting effects of hindsight," evaluate counsel's conduct from his perspective at the time and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*; *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020).

With respect to prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome," and the "likelihood of a different result must be substantial, not just conceivable."  *Id.*; *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The Sixth Amendment's guarantee of the effective assistance of counsel applies during plea negotiations.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  And *Strickland*'s

two-part test governs ineffective assistance claims stemming from guilty pleas.  *Hill v.*

*Lockhart*, 474 U.S. 52, 58 (1985).

III

Bristol's ineffective assistance of counsel claims fail because he cannot show

deficient performance and prejudice for any of them.  *See Strickland*, 466 U.S. at 687.

Nor is an evidentiary hearing warranted since the parties' filings and the record

conclusively show Bristol is not entitled to relief.  *See* § 2255(b); *Arrington*, 13 F.4th at

334.

A

Bristol contends in claim one that Adamo failed to investigate whether Bristol

was mentally competent to plead guilty and whether he could do so knowingly,

voluntarily and intelligently.  (Pl's Pet. ¶¶ 14, 34.)

1

Counsel must investigate only when he "has cause to do so."  *United States v.*

*Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997).  Stated otherwise, he must "make

reasonable investigations" or reasonable decisions that make particular investigations

unnecessary.  *Strickland*, 466 U.S. at 691.

When a criminal defendant gives counsel reason to believe pursuing an

investigation would be fruitless, counsel's decision to not pursue it cannot subsequently

be challenged as unreasonable.  *Blystone v. Horn*, 664 F.3d 397, 422 n.21 (3d Cir. 2011)

(internal quotation marks omitted).  If the defendant alleges counsel's failure to

investigate caused him to plead guilty, the defendant must show a likelihood the

7

investigation would have uncovered "some evidence" to cause counsel to change his recommendation to plead guilty. *Kauffman*, 109 F.3d at 191.

Due process requires a criminal defendant to be competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). Competence is "sufficient present ability to consult with [the defendant's] lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings" against the defendant. *Id.* (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)).

A defendant's guilty plea must be also knowing, voluntary and intelligent. *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969) (defendant must have a "full understanding of what the plea connotes and of its consequence").

2

There is no record support for Bristol's claim that he was mentally incompetent to plead guilty or could not do so knowingly, voluntarily or intelligently. Consequently, Adamo had no reason to investigate either issue. *See Kauffman*, 109 F.3d at 190. In fact, Bristol's conduct gave Adamo cause to believe investigating would have been fruitless. *See Blystone*, 664 F.3d at 422 n.21.

Beginning with Bristol's competency, at his change of plea hearing, he stated he could think clearly and had received no mental health treatment for twenty years. (Change of Plea Hr'g Tr. 7:17–20, 8:6–9, 8:18–10:19.) The Court also found Bristol was competent to plead guilty, and Bristol did not object when his and the Government's lawyer said they believed he was competent. (*Id.* at 53:21–24, 51:22–25, 53:1–5.) It

was clear Bristol could rationally consult with Adamo and that he understood the

criminal proceedings against him.  *See Godinez*, 509 U.S. at 396; *infra* subsection

III.D.2.

There is also no doubt that Bristol's plea was knowing, voluntary and intelligent.

*See Parke*, 506 U.S. at 28–29; *Alford*, 400 U.S. at 31.  During his colloquy with the

Court, Bristol affirmed that he understood the proceeding and his guilty plea

agreement.  (Change of Plea Hr'g Tr. 13:17–18:17.)  The Court accepted Bristol's guilty

plea as knowingly, voluntarily and intelligently made, and ensured Bristol understood

all facets of his change of plea and its consequences.  (*Id.* at 53:21–54:2); *see Boykin*, 395

U.S. at 243–44.

Bristol cannot show a likelihood that an investigation by Adamo would have

uncovered evidence that he was either mentally incompetent to plead guilty or could

not do so voluntarily, intelligently and knowingly.  *See Kauffman*, 109 F.3d at 191.  To

the contrary, the record shows Bristol fully understood all aspects of his crimes and all

potential consequences of his plea.  There was nothing to indicate to the Court or

anyone else present that Bristol was not fully competent.

B

Bristol alleges in claim two that Adamo failed to pursue an insanity, diminished

capacity[4] or other unspecified "mental health" defense, including by not hiring a mental

health expert or interviewing friends and family members.  (Pl's Pet. ¶¶ 27–29.)

---

[4]      A criminal defendant who claims diminished capacity concedes "general criminal liability"
and seeks to show he lacked the "capacity to possess the state of mind required by the legislature to
commit a *particular degree* of the crime charged." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295 (3d
Cir. 1991) (emphasis in original) (citing *Commonwealth v. Walzack*, 360 A.2d 914, 919–20 (Pa.
1976)).  In contrast, to prove insanity the defendant must show that when he committed the offense

To prove a failure to investigate witnesses constituted ineffective assistance of counsel, the defendant must show the witness would have provided helpful testimony. *United States v. Brown*, No. 02-619-2, 2010 WL 11519895, at *1 (E.D. Pa. Mar. 25, 2010) (citing *Kauffman*, 109 F.3d at 190). Put another way, defense counsel need not have interviewed a witness "whose testimony would not have exculpated the defendant." *United States v. Jones*, 785 F. Supp. 1181, 1183 (E.D. Pa. 1992) (citing *Lewis v. Mazurkiewicz*, 915 F.2d 106, 112–14 (3d Cir. 1990)).

Nothing in the record suggests a diminished capacity, insanity or other kind of mental health defense would have had any merit. It follows that Adamo's decision not to pursue such a defense was reasonable. *Strickland*, 466 U.S. at 691.

There was never, at any point in this case, any indication that Bristol suffered from mental health issues—until he claimed as much for the first time in his Petition. In turn, there is no record support for Bristol's *post hoc* allegations that he has an unspecified "chemical [i]mbalance" and "mental abnormality"; that he may suffer from narcissistic, antisocial and obsessive compulsive personality disorders; and that when he committed his offenses an unidentified "biologically driven deficit" interfered with his capacity for judgment and reflection. (Pl's Pet. ¶¶ 18, 22.)

The facts of Bristol's crimes make plain he was not mentally impaired while committing them. Bristol used the internet to find and communicate with child sex traffickers, requested that underage girls perform specific sexual acts for his gratification and booked a trip to the Philippines so he could continue his sexual exploitation of minors in person.

---

he did not know the "nature and quality" of his conduct or that "what he was doing was wrong." *Commonwealth v. duPont*, 730 A.2d 970, 978 (Pa. 1999) (quoting 18 Pa. Stat. and Cons. Stat. § 315).

Moreover, Bristol's statements to the probation officer belie any claim to a mental health defense. Bristol "appeared alert and responded in a coherent and logical manner" during two interviews and provided detailed information about, *inter alia*, his background, family, health and education. (Presentence Investigation Report ¶¶ 74–112.)

Bristol told the probation officer he worked as a truck and tractor trailer driver for approximately twenty years before being arrested for his offenses in January of 2018 and obtained a permit to carry a concealed weapon. (*Id.* at ¶¶ 100–04.) The latter required a mental health background check and Bristol to affirm he was of "sound mind" and had never been committed to a mental institution. (*Id.* at ¶ 98); 18 Pa. Stat. and Cons. Stat. § 6109 (citing § 6111).

Further, Bristol's friends and family could not, unless they were lying to the Court at his sentencing hearing, have bolstered any purported mental health defense. *See Brown*, 2010 WL 11519895, at *1. Two of Bristol's sons, his sister, cousin, son's partner and mother of his oldest son testified at the sentencing hearing; and Bristol's brother, friend and nephew submitted letters on his behalf. (Sentencing Hr'g Tr. 21:8–43:15.) These character witnesses (as well as Bristol himself) said nothing about him having mental health problems. And given that neither Bristol nor his friends and family offered any reason to believe he had mental health problems, a mental health expert would have been hard pressed to make a different case. *See Jones*, 785 F. Supp. at 1183.

C

Bristol alleges in claim three that Adamo failed to move to suppress a confession federal agents allegedly obtained from Bristol unconstitutionally. (Pl's Pet. ¶¶ 30–33.) In particular, Bristol contends that when he confessed he was suffering from "mental and cognitive impairments" that prevented him from understanding his "rights and the consequences of waiving them." (*Id.* at ¶ 30.)

1

Effective assistance does not require counsel to file every possible motion, including suppression motions—only those with a "solid foundation." *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980) (quoting *United States v. Hines*, 470 F.2d 225, 232 (3d Cir. 1972)). To show prejudice, the petitioner must show he likely would have prevailed on the suppression motion and that, after prevailing, there is a reasonable probability he would not have been convicted (including through a guilty plea). *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

As best the Court can tell, Bristol claims his confession violated both due process and his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Due process requires a criminal defendant's confession to be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973). A confession is voluntary if, based on the "totality of all the surrounding circumstances," the defendant's will was not "overborne" when he confessed. *Id.* at 225. Further, for a confession to be involuntary, there must be "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A defendant's mental state in itself, apart from any official coercion, cannot establish involuntariness. *Id.* at 164.

In addition, a criminal defendant's waiver of his *Miranda* rights is valid if it was knowing, intelligent, and voluntary. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). A defendant can implicitly waive his *Miranda* rights without any express statements of waiver. *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010) (*Miranda* waiver can be implied through the defendant's "silence, coupled with an understanding of his rights and a course of conduct indicating waiver" (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979))).

2

Bristol's claims of *Miranda* and due process violations are meritless. As a consequence, there was no basis for Adamo to move to suppress Bristol's confession. *See Swinehart*, 617 F.2d at 341.

Bristol never claimed his confession was illegally obtained before filing his § 2255 Petition. Indeed, Bristol did not object when the Court adopted the facts set forth in the Presentence Investigation Report, including those pertaining to his confession. (Sentencing Hr'g Tr. 10:3–18.) Federal agents arrested Bristol just before he boarded a plane to the Philippines, where he intended to sexually exploit underage girls. (PSR ¶¶ 16–20.) Bristol then "waived his *Miranda* rights and agreed to speak to agents." (*Id.* at ¶ 24 (emphasis added).) Bristol proceeded to provide detailed information about his crimes. (*Id.* at ¶¶ 24–25.)

These uncontested facts refute Bristol's claim that his constitutional rights were violated when he confessed because he was mentally impaired. Again, Bristol's allegations of mental illness are contradicted by the record. *See supra* Section III.B. Even if they had merit, Bristol's claim that his confession was involuntary would fail

13

because there is nothing to indicate his confession was coerced or his will overborne. *See Connelly*, 479 U.S. at 164, 167; *Bustamonte*, 412 U.S. at 223.

Nor is there anything which could show that Bristol's waiver of his *Miranda* rights was not knowing, voluntary and intelligent. *See Shatzer*, 559 U.S. at 104. Again, Bristol did not object to the PSR's statement that he waived his rights and agreed to confess. *See* (PSR ¶ 24); *Butler*, 441 U.S. at 373. While Bristol now claims he was mentally impaired, he provided detailed statements to the federal agents who arrested him. *See Berghuis*, 560 U.S. at 383.

Accordingly, a motion to suppress the confession would have lacked any foundation, much less a solid one. *See Swinehart*, 617 F.2d at 341. Moreover, Bristol would likely have been convicted without the confession. *See Strickland*, 466 U.S. at 694. The Government gathered a mountain of incriminating evidence that conclusively established Bristol's guilt, including chat messages, internet subscriber records and wire transfers. (Change of Plea Hr'g Tr. 30:16–39:16.)

D

Bristol contends in claim four that Adamo inadequately advised him with respect to the potential sentence he could receive if he pleaded guilty. (Pl's Pet. ¶¶ 34–39.) Specifically, Bristol contends Adamo told him his maximum possible prison sentence was 120 or 180 months when it was actually life. (*Id.* at ¶ 36.)

1

To prove prejudice on a claim that counsel provided faulty advice during plea negotiations, the petitioner must show there is a reasonable probability that, but for counsel's advice, he "would not have pleaded guilty and would have insisted on going to

trial." *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163.  In doing so, the petitioner cannot

merely make a "bare allegation" he would have proceeded to trial if not for counsel's

deficient advice. *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).  Additionally,

erroneous sentencing information counsel allegedly provided can be corrected by a

written plea agreement and plea colloquy that "accurately stated [the criminal

defendant's] potential sentence." *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir.

2007).

2

Bristol's claim is starkly at odds with the record.  At his change of plea hearing,

Bristol said he was satisfied with his discussions with Adamo about his guilty plea. *See*

(Change of Plea Hr'g Tr. 11:20–12:1).  Bristol also stated he read his guilty plea

agreement and understood its material terms. (*Id.* at 13:17–18:17.)  Among those terms

were those pertaining to his maximum possible sentence, which the Government

recited without objection from Bristol. (*Id.* at 46:5–48:1.)  Specifically, the guilty plea

agreement provided that Adamo explained to Bristol—and Bristol understood and

agreed—that the Court could impose a maximum of life imprisonment. (ECF 37 ¶ 3.)

Bristol's guilty plea agreement and his statements at the change of plea hearing

show unequivocally he knew his maximum potential sentence was life in prison and

nothing Adamo could have said changes that fact. *See Hill*, 474 U.S. at 59; *Lafler*, 566

U.S. at 163.

Even if the Court were to assume Adamo did tell Bristol his maximum possible

sentence was 120 or 180 months, that erroneous information would have been

irrelevant.  Adamo's incorrect statement would have been corrected by the Court's

15

extensive (and accurate) colloquy with Bristol at his change of plea hearing and his guilty plea agreement. *See Shedrick*, 493 F.3d at 300; *e.g.*, *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (ineffectiveness claim based on counsel's alleged incorrect sentencing advice failed when district court "engaged Jones in a lengthy and extensive colloquy" at his change of plea hearing and "clearly warned" him of the maximum sentences for the charged offenses).

## E

Finally, Bristol asserts in claim five that Adamo failed to object to "general sentence." (Pl's Pet. ¶ 40.)  The nature of this claim is unclear, and Bristol does not say what he thinks Adamo should have done differently.  Counsel did argue that Bristol should receive a reduced sentence.  In particular, at Bristol's sentencing hearing, Adamo contended the Court should vary downward on several grounds, including that Bristol was a "hardworking" and "family" man—major themes of the extensive testimony from Bristol's friends and family.  (Sentencing Hr'g Tr. 16:21–19:21.)  In any event, Adamo's decision to not raise a particular objection to Bristol's sentence is a strategic choice the Court cannot second guess and to which it must be highly deferential.  *See United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005); *Rolan v. Vaughn*, 445 F.3d 671, 681 (3d Cir. 2006).

## IV

Bristol also filed an application for leave to file a second or successive habeas petition under § 2255.  (ECF 86.)  Pursuant to an order from the Third Circuit Court of Appeals, the Court considers Bristol's application a Motion to Amend his § 2255 Petition, with a filing date of April 5, 2021.  (ECF 85.)

Bristol's Motion to Amend is governed by Federal Rule of Civil Procedure 15. *See Mayle v. Felix*, 545 U.S. 644, 654–55 (2005).  A § 2255 petitioner can amend "once as a matter of course" within twenty-one days after service of the response.  Fed. R. Civ. P. 15(a)(1)(B).  The Court grants Bristol's Motion, which he filed seven days after the Government filed its response on March 29, 2021.  *See* (Gov't's Resp., ECF 70; Mot. to Amend; May 27, 2021 Third Circuit Order).

As amended, Bristol's § 2255 Petition contains the following four additional claims: that the Court incorrectly applied an eight-level sentencing enhancement for involvement of a minor under twelve years old[5] pursuant to USSG § 2G1.3(b)(5) and two-level enhancement for unduly influencing a minor to engage in prohibited sexual conduct pursuant to USSG § 2G1.3(b)(2); that Bristol did not violate 18 U.S.C. § 2422(b), as charged in Counts One and Two; that provisions in Bristol's guilty plea agreement for violating supervised release are unlawful; and that the Court should have varied below Bristol's advisory sentencing guideline range because he cooperated with the Government.  (Mot. to Amend.)

Bristol's additional claims are foreclosed by the collateral attack waiver in his guilty plea agreement.  (ECF ¶ 16.)  When entered knowingly and voluntarily, such a

---

[5]     In his guilty plea agreement, Bristol stipulated that his crimes involved a child younger than twelve years old.  (ECF 37 ¶ 13(e).)  That agreement erroneously stated this specific offense characteristic carried an enhancement of two, rather than eight, levels.  (*Id.*; Status Conf. Tr. 2:23–3:8, ECF 58); *see also* (Presentence Investigation Report ¶ 6(f), n.2 (noting correction)).  Between Bristol's change of plea and sentencing, the Court held a status conference to address this error in his guilty plea agreement.  (Aug. 20, 2019 Minute Entry, ECF 48.)  The change from a two to eight-level enhancement resulted in a higher advisory guideline range—namely, 360 months to life.  (Sentencing Hr'g Tr. 16:1–4, ECF 59.)  Bristol confirmed at the status conference that he understood his new guideline range.  (Status Conf. Tr. 5:21–7:14); *see also* (Sentencing Hr'g Tr. 16:1–10 (Bristol didn't object to guideline range based on correct eight-level enhancement)).

waiver is valid unless it "work[s] a miscarriage of justice." *United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005).  It does not here.

V

A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability.  28 U.S.C. § 2253(c)(1).  For a district court to issue such a certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."  § 2253(c)(2).  To do so, he must demonstrate "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A certificate of appealability is not warranted because reasonable jurists would not debate the Court's ruling, and Bristol has not made a substantial showing that his Sixth Amendment right to the effective assistance of counsel was violated.[6]  *See* § 2253(c)(2); *Slack*, 529 U.S. at 484.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[6]     Bristol also requests discovery from the Government and Adamo, unspecified transcripts, a lawyer and a psychological evaluation.  (Pl's Pet. ¶¶ 13–24, 41–57, ECF 63; Pl's Feb. 26, 2021 Letter, ECF 68.)  The Court denies these requests in light of the conclusive lack of merit to Bristol's § 2255 Petition.